THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MAVIS EGAN, Appellant.

Fourth Department, December 12, 1980

APPEARANCES OF COUNSEL

*Charles F. Crimi* for appellant.

*Lawrence T. Kurlander, District Attorney (Stephen Brent* of counsel), for respondent.

**OPINION OF THE COURT**

SIMONS, J. P.

After separate trials, defendant and her husband James Egan have been convicted of the murder of defendant's former husband, James Gerks.[1] The three lived together in

---

1. James Egan's conviction for murder, second degree, was reversed *(People v Egan,* 72 AD2d 239). He subsequently pleaded guilty to manslaughter, first degree *(People v Egan,* 78 AD2d 1017). (Additional facts appear in the opinion at 72 AD2d 239.)

a residence owned by Gerks' father and an acquaintance, Vic Vyverberg, also stayed overnight with them occasionally and did so on the night of the killing. At the trial, Vyverberg supplied the crucial evidence that led to the defendant's conviction. He testified to the Egans' motive for the killing and that he helped them dispose of the body and the gun after the shooting. But more importantly, he testified about the Egans' admissions at the time of the killing and it is the admissibility of that testimony which raises the central issue on this appeal.

Vyverberg testified that on the day of the shooting he and the Egans had been out drinking. They returned to the house at about 10:45 P.M. and shortly thereafter Vyverberg fell asleep on the couch. Sometime later he was awakened by a noise, saw James Egan in the room and, seconds after, saw defendant next to him holding a gun. He then testified:

"A. Jim happily said, 'We blew the sucker away', and a few swear words to that effect that the so and so is gone and we have no more problems and that Mavis makes the first hit woman in the world, you know, slang words, you know.

"Q. Did Mavis say anything?

"A. Yes. She said she was glad it was over with and done with in a solemn way."

Defendant contends that this evidence was inadmissible hearsay and that the receipt of it was a denial of her constitutional right of confrontation.

Hearsay is "[e]vidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated" (American Law Institute Uniform Rules of Evidence [9A ULA 635]; see, also, *People v Caviness*, 38 NY2d 227, 230). A statement within the intendment of the rule includes "not only an oral or written expression but also non-verbal conduct of a person intended by him as a substitute for words in expressing the matter stated" (Uniform Rules of Evidence, rules 63, 62).

Generally, hearsay evidence is not permitted, of course,

but there are recognized exceptions to the rule and this evidence was admissible under at least three of them.

First, Vyverberg's testimony was properly received because defendant's silence, when she would naturally be expected to deny her husband's accusation, was a tacit admission of its truth. His statements were admissible unless it appeared that defendant did not hear them or was unable to respond to them (Richardson, Evidence [10th ed, Prince], § 222, see *People v Allen*, 300 NY 222; *People v Kennedy*, 164 NY 449). The reason for the exception is clear enough. Persons not privileged to remain silent (see, e.g., *People v Conyers*, 49 NY2d 174) normally respond to statements inculpating them in criminal conduct if they hear and understand them, and their failure to do so is some evidence of the truth of the statement. The rule does not apply here, defendant contends, because she was intoxicated when her husband spoke and she did not hear or understand his statement. The question of defendant's intoxication was before the jury, however, and Vyverberg's testimony that following Egan's statements defendant said that she was glad it was over, is evidence that she was aware of what he said.

Second, the statements were admissible as declarations against penal interest. Such statements are excepted from the rule barring hearsay evidence if: the declarant is unavailable to testify, he was aware that the statement was adverse to his penal interest when he made it, he had knowledge of the facts underlying the statement, and, supporting circumstances are present to attest to the reliability of the declaration *(People v Settles*, 46 NY2d 154, 167; see *People v Harding*, 37 NY2d 130, concurring opn of COOKE, J.). Egan's statements readily meet these requirements. He was unavailable because he invoked his right against self incrimination and refused to testify at defendant's trial. As an alleged participant, there can be no question that he had firsthand knowledge of the facts underlying his statement, and he must certainly have realized that implicating himself in a murder would subject him to prosecution. Beyond that, the supporting circumstances attest to the reliability of the statements. Egan made the state-

ments shortly after the commission of the crime, before he had been apprehended or was subject to criminal prosecution (cf. *People v Settles, supra*), and Vyverberg's narrative of the evening's events and the considerable physical evidence developed by the police supplied additional corroboration.

Finally, Egan's statements were properly admitted as spontaneous declarations made, as they were, by a participant after a startling event and before he had time to reflect and fabricate (see *People v Edwards*, 47 NY2d 493, 496-497; *People v O'Neall*, 47 NY2d 952, 954; *People v McCullough*, 73 AD2d 310, 313; see *People v Caviness*, 38 NY2d 227, 230-232, *supra*). It is not clear whether the murder occurred immediately before Egan spoke (it is reasonable, however, to infer that the gunshot woke Vyverberg), but in any event, it has been held that statements need not be coincident in time with the event to be admissible as spontaneous declarations *(People v Edwards, supra*, at p 498). If the court determines that the declarant was so influenced by the excitement and shock of the event that it is probable that he spoke impulsively and without reflection rather than after deliberation, the statement is admissible *(People v Caviness, supra*, p 231).

Thus, the evidence came within three recognized exceptions to the hearsay rule, each supplying its own guarantee of trustworthiness because of the circumstances under which the statements were made. That being so, we do not believe that the evidence was barred by the rule in *Bruton v United States* (391 US 123), or the confrontation clause of the Sixth Amendment, although cases may be found involving similar facts which state otherwise (see *People v Cepeda*, 61 AD2d 962, mot for lv to app den 44 NY2d 952, and *People v Geoghegan*, 68 AD2d 279; but see Fisch, New York Evidence [2d ed], § 899, n 47a, 1980-1981 supplement).

In *Bruton v United States (supra)*, the court held that it was constitutional error to admit a defendant's confession which implicated his codefendant and that the prejudice could not be cured by the court's instructions to the jury to disregard the inculpatory portions of the confession.

*Bruton* is distinguishable from this case because it involved a joint trial. But more importantly, it is distinguishable because the defendant's confession in *Bruton* was inadmissible hearsay as to the appealing codefendant under any view of the evidence. Those considerations aside, however, the Supreme Court did not decide in *Bruton* that declarations against interest are not admissible in criminal trials. On the contrary, it specifically noted that it was not ruling that all hearsay evidence is constitutionally inadmissible *(Bruton v United States, supra,* p 128, n 3). We may consider whether receipt of Vyverberg's testimony abridged defendant's constitutional right of confrontation, therefore, without reference to *Bruton.*

The Sixth Amendment states that in all criminal prosecutions the accused shall enjoy the right "to be confronted with the witnesses against him". This protection is obligatory on the States by the Fourteenth Amendment *(Pointer v Texas,* 380 US 400, 403; see, also, NY Const, art I, § 6). The historical purpose of the confrontation clause is to prohibit trial by ex parte affidavits and to advance the search for truth by guaranteeing the reliability of the evidence submitted against a criminal defendant *(California v Green,* 399 US 149, 156-160; see, also, Baker, The Right to Confrontation, 6 Conn L Rev 529; Read, The New Confrontation-Hearsay Dilemma, 45 S Cal L Rev 1). The clause contemplates that reliability will be guaranteed by the use of cross-examination, the penalties against perjury and the jury's in-person evaluation of the witness. But these are not the only ways to guarantee reliability; the common law rules regarding hearsay evidence have been developed with the same overriding consideration. Nevertheless, hearsay evidence is not, per se, barred in criminal trials, the confrontation clause of the United States Constitution (see *Dutton v Evans,* 400 US 74, 80; *California v Green, supra,* pp 155-156; *Pointer v Texas, supra,* pp 403-407), or the similar clause in the New York Constitution *(People v Nisonoff,* 293 NY 597) notwithstanding. Several "narrow and cautious exceptions" to an accused's constitutional right to confront the witnesses against him have been recognized (see *People v Sugden,* 35 NY2d 453, 460). They include dying declarations (see *Mattox v United States,* 156

US 237; *People v Corey*, 157 NY 332, 347-348; *People v Liccione*, 63 AD2d 305, affd 50 NY2d 850), book entries or public records *(Gilstrap v United States*, 389 F2d 6; *Heike v United States*, 192 F 83, 94-95, affd 227 US 131; *People v Sugden, supra; People v Nisonoff, supra)*, spontaneous declarations *(People v Del Vermo*, 192 NY 470) and the statements of coconspirators *(Dutton v Evans, supra; People v Salko*, 47 NY2d 230).[2] The confrontation clause and the hearsay rule serve similar purposes, but as the exceptions prove, the two concepts are not congruent and the former does not prohibit, in every case, consideration of the latter in a criminal trial.

Just when inculpatory hearsay evidence may be received, however, is not entirely clear. No general test has been formulated and admissibility depends upon the reliability of the evidence and the necessity for its use, coupled with general considerations of due process (see *Ohio v Roberts*, 448 US 56, 65-66; *Dutton v Evans, supra; California v Green, supra*, esp concurring opn of HARLAN, J.; *People v Maerling*, 46 NY2d 289, 295-296, 298).[3] We hold that the evidence challenged in this case satisfies those considerations. Vyverberg's testimony concerning the Egans' statement was necessary to the prosecution because there was no eyewitness to the killing of James Gerks available to testify. The statements met the several tests for exceptions to the hearsay rules formulated by our courts and they were also reliable because they were unsolicited, inculpatory remarks made immediately after the killing when the defendants had no occasion to lie. Finally, the truth of the statements was well

---

2. The exception for coconspirator's statements is difficult to reconcile with the confrontation clause because admissibility of such statements is not based upon indicia of reliability but upon various theories of vicarious conduct or because the statements are considered "verbal acts".

3. Several writers have suggested standards for determining when evidence admissible as an exception to the hearsay rule may be received without violating the confrontation clause (see, e.g., Younger, Confrontation and Hearsay: a Look Backward, a Peek Forward, 1 Hofstra L Rev 32; Fine, Declarations Against Penal Interest in New York: Carte Blanche?, 21 Syracuse L Rev 1095; Baker, The Right to Confrontation, 6 Conn L Rev 529; Read, The New Confrontation-Hearsay Dilemma, 45 S Cal L Rev 1). The Supreme Court has declined to state any general rule (see *California v Green, supra*, p 162), and the Court of Appeals has not had occasion to (see *People v Maerling, supra*, p 299; *People v Salko*, 47 NY2d 230, 241, *supra)*.

supported by corroborating evidence and the jury's consideration of them did not deprive defendant of any due process right or interfere with her receiving a fair trial.

The other points raised by defendant do not constitute grounds for reversal and require no discussion.

The judgment should be affirmed.

SCHNEPP, CALLAHAN, DOERR and WITMER, JJ., concur.

Judgment unanimously affirmed.