OPINION OF THE COURT
Michael R. Juviler, J.
This opinion is filed in further explanation of my ruling on March 2, 1982, during a jury trial, admitting in evidence, as declarations against interest, statements made by a person who was not a witness at the trial, which incriminated the defendant. Also at issue was the question whether allowing the statements in evidence violated the defendant’s right of confrontation under the Sixth Amendment to the Constitution of the United States. Although the defendant was acquitted, the newness of the latter issue (there is no reported decision on it by a court in this Judicial Department or by the Court of Appeals) warrants this writing.
The defendant, the manager of the meat department at a supermarket on Avenue H in Brooklyn, was indicted for bribery in the second degree (Penal Law, § 200.00). The People contended that the defendant paid a bribe of $40 to Morris Kleinman, an inspector employed by the New York *612 City Department of Consumer Affairs, to influence him not to charge the defendant with certain violations relating to labeling and short-weighting. The witness to the alleged bribe, Detective Edward Gruskin, had been posing to Kleinman and operators of supermarkets as Kleinman’s fellow inspector, while he was equipped with a concealed recording machine. He testified that he did not overhear or record the conversation accompanying the bribe, but that he saw the defendant give Kleinman money in the “meat room” at the rear of the store.
The subject of the present ruling is Gruskin’s testimony about two conversations with Kleinman that allegedly took place later on the same day. In the first, a few minutes after the alleged payment, when Gruskin and Inspector Kleinman were in the grocery section at the front of the store, Gruskin asked Kleinman whether he should inspect the groceries, which were supervised by the owner of the supermarket, a person other than the defendant. Klein-man said,
“Don’t bother, the guy up front already gave us.
“What about the butcher?
“He gave us too.”
Secondly, Gruskin testified that a few hours later, after he and Kleinman had inspected two more stores, Kleinman dropped him off by car and started to drive away without paying him his share of the day’s payments by store managers, which included $40 paid before the visit to defendant’s store. Stopped and reminded of this by Gruskin, Kleinman apologized. According to Gruskin, this conversation followed:
(Gruskin) “We got something at the first stop?
“Forty dollars.
“At Avenue H?
“Yes. Forty from the butcher and twenty from the grocer.
“That’s a hundred?
“That’s right. You get fifty.”
Kleinman then gave Gruskin $50 in $10 bills, which were admitted in evidence over objection.
*613 The People offered the two conversations between Klein-man and Gruskin, and the dividing of the money, as declarations against penal interest by Kleinman, therefore, admissible although hearsay.
Traditionally, in courts of this State declarations against pecuniary interest have been treated as an exception to the rule that excludes hearsay from evidence. In recent years the Court of Appeals expanded the exception to include declarations against penal interest offered by the defendant in a criminal case to exculpate himself (People v Brown, 26 NY2d 88). More recently, the Court of Appeals has held that a declaration against penal interest may be admitted not only in favor of the defendant, but against the defendant (People v Settles, 46 NY2d 154; People v Maerling, 46 NY2d 289).
These decisions establish that if the prescribed standards for receipt of a declaration against interest in evidence are met, admissibility is largely a matter for the trial court’s discretion. All of those standards have been met in this case.
The first requirement is that the person whose declarations are to be offered is unavailable as a witness. The District Attorney submitted undisputed medical evidence showing to my satisfaction that Kleinman’s appearance in court would pose a serious threat to his life. It has also been confirmed by Kleinman’s lawyer that Kleinman, who is under indictments for bribe receiving for the present transaction and many others, would claim his privilege against self incrimination and not testify unless he were given immunity from prosecution, an immunity which the District Attorney reasonably has declined to confer. For each of these two reasons, Kleinman is unavailable as a witness.
The second requirement is that the declarant be aware that the statements are adverse to his interest. As to the first statement, it was against Kleinman’s penal interest to admit that he had just allowed the “butcher” to “give” to him. And in view of Kleinman’s experience as an inspector, it must have been apparent to him that he was admitting a serious crime and a violation of his responsibilities. His indication of awareness that the subject of his report to *614 Gruskin put him in danger of criminal investigation is also reflected in a tape recording made earlier in the day, not presented to the jury but received by the court at a pretrial hearing, in which Kleinman was overheard to say to Gruskin:
“Better keep your mouth shut, this thing may be wired.
“What do you mean, wired?
“Puts it on tape, puts all the information you’re talking about on the tapes.”
Kleinman’s mistaken belief that he could trust his “accomplice” not to reveal his admission does not detract from its status as a declaration against interest (see People v Egan, 78 AD2d 34).
The second conversation at issue, relating to Kleinman’s receipt of “forty dollars” at the “first stop,” and “forty from the butcher and twenty from the grocer” on Avenue H, and Kleinman’s splitting of money with Gruskin, was also knowingly against Kleinman’s penal interest, for the reasons discussed above. In addition, both conversations were knowingly against Kleinman’s pecuniary interest, because by his statements and actions he acknowledged events that required him to give money to Gruskin.
The third requirement for admissibility is that the declarant have knowledge of the subject of his statements. Kleinman’s statements themselves and Gruskin’s alleged observation of Kleinman’s acceptance of money from the declarant established this knowledge.
The fourth requirement is that the surrounding circumstances give sufficient indication of the trustworthiness of the declaration, and that the opposing party have the opportunity to show that these indications of reliability are misleading.
There were strong indications of the trustworthiness of Kleinman’s reports to Gruskin. The tape recording of the inspectors’ visit to the store, and Gruskin’s testimony, established that there had been a conversation with the defendant about violations by him which could have caused substantial fines; Gruskin testified under oath that he witnessed the payment; and after the alleged payment *615 reported by Kleinman, the inspectors gave the defendant a clean certificate of inspection despite apparent violations, an action confirming a corrupt payment as reported by Kleinman. Moreover, there appeared to be no motive for Kleinman to fabricate in his report to Gruskin.
At the trial, the defense was given ample opportunity to test these indications of trustworthiness, even to the extent of impeaching Kleinman as a “witness” by introducing evidence, through the People’s and the defendant’s witnesses, of Kleinman’s inveterate corruption. Evidence was also admitted to show that Kleinman’s alleged report to Gruskin could have referred to someone other than the defendant.
Thus, all of the requirements for admissibility of Klein-man’s statements and actions as declarations against interest were satisfied. That, however, is not the end of the problem. The defendant raised a very substantial question of law by arguing that whatever the applicability of the New York rule of evidence regarding declarations against interest, admission of this evidence would violate his right of confrontation under the Sixth Amendment.
In California v Green (399 US 149), the Supreme Court of the United States made clear that compliance with a State rule of evidence admitting hearsay does not, of itself, satisfy the Federal right of confrontation. The question whether use of a declaration against interest may violate the right of confrontation has been left open by the New York Court of Appeals, in cases in which it was not necessary to reach the issue (see People v Maerling, 46 NY2d 289, supra; People v Geoghegan, 51 NY2d 45). Two Appellate Divisions, however, have ruled that when a trial court finds compliance with the New York rule on declarations against interest, and the evidence is offered against a defendant in a criminal case, the Federal right of confrontation must be considered, at least if it is claimed (People v Egan, 78 AD2d 34, supra [4th Dept]; People v Geoghegan, 68 AD2d 279 [1st Dept], affd on other grounds 51 NY2d 45, supra). Thus, by allowing a new type of hearsay evidence to be used against a defendant in a criminal action, Settles and Maerling have opened a significant area to judicial scrutiny.
*616 To date, no definitive standards for determination of the Federal question in relation to a declaration against interest have been established. Presumably, the court should consider the effect of the offered declaration as evidence against the defendant; the scope of cross-examination available, and the availability of alternative methods of testing the credibility of the declaration; and the statement’s apparent trustworthiness (cf. Dutton v Evans, 400 US 74; United States v Wright, 588 F2d 31, cert den 440 US 917). In Dutton v Evans (supra), the Supreme Court, applying these tests in an analogous situation, held that the receipt in evidence in a State court of a coconspirator’s declaration in furtherance of the conspiracy, pursuant to a State exception to the rule against hearsay, did not violate the defendant’s right of confrontation on the facts of that case. In United States v Wright (supra), the Court of Appeals for the Second Circuit used such reasoning to uphold the use in a Federal court of a coconspirator’s declaration, despite the defendant’s Sixth Amendment objection (see, also, People v Rastelli, 37 NY2d 240 [New York rule of evidence admitting declarations of coconspirators does not violate defendant’s Federal right of confrontation]).[1] How do these tests apply here?
The statements offered against the defendant, while very damaging, were not essential to the People’s case. In United States v Wright (supra), a Government witness was permitted to testify that an executive of a business corporation had told him that the defendant had asked the executive for $5,000 in cash as a political contribution in exchange for a public contract. Kleinman’s statements were no more damaging. In Rastelli (supra), the New York Court of Appeals upheld the use of numerous statements of *617 coconspirators implicating the defendant. In Dutton v Evans (supra), the hearsay statement at issue was less damaging than those here, but also less trustworthy.
As to the availability of cross-examination, this court permitted wide cross-examination of the main prosecution witness, Gruskin, and broad scope to the defense to show the unreliability of the alleged declarations; while no substitute for cross-examination of Kleinman, these alternatives are to be considered. In addition, the court gave instructions on this subject in its charge to the jury.[2]
The third test applied here was the apparent trustworthiness of the offered statements. I have discussed this subject earlier in this opinion. The indices of trustworthiness in this case, including independent evidence corroborating Kleinman’s report, went beyond the level of confirmation normally required to admit a declaration against interest, and are ample for purposes of the Sixth Amendment. Absent here is the risk of false accusation by an appre *618 hended accomplice seeking to benefit himself, noted in Bruton v United States (391 US 123; see, also, People v Settles, supra; People v Geoghegan, supra).
In sum, the facts considered as a whole justified introduction of Kleinman’s alleged statements to Gruskin as not in violation of the right of confrontation (see, also, United States v Winley, 638 F2d 560, 563 [admission in evidence of pleas of guilty of defendant’s alleged coconspirators hs- declarations against interest, to establish the conspiracy, did not violate Sixth Amendment]; United States v White, 553 F2d 310, cert den 431 US 972 [statement by arrested accomplice, same result]; compare United States v Puco, 476 F2d 1099, 1104, 1107, cert den 414 US 844).
Further support for admissibility of these declarations despite the Sixth Amendment is the widespread acceptance of declarations of interest as evidence in the Federal courts, and, by statute, in 17 States (see Federal Rules of Evidence, rule 804, subd [b], par [3] [US Code, tit 28]; United States v Winley, 638 F2d 560, supra; United States v Garris, 616 F2d 626; Uniform Rules of Evidence [1974], rule 804, subd [b], par [3], 13 Uniform Laws Ann., pp 339-340; Model Code of Evidence [1940], rule 509; Proposed Code of Evidence for State of New York, § 804, subd [b], par [3], Commentary and Historical Note).

. In the present case, the offered statements were declarations of a coconspirator in furtherance of a conspiracy. Although no conspiracy was charged, the People’s evidence, apart from Kleinman’s declarations, established a prima facie case of conspiracy to commit the crime of obstruction of governmental administration (see Penal Law, §§ 105.00, 195.05). A charge of conspiracy in the indictment is not necessary for admissibility of a declaration of a coconspirator (People v Luciano, 277 NY 348; People v Cassidy, 213 NY 388; People v Pontani, 33 AD2d 688). These principles were not a basis for admissibility here, however, because the conspiracy theory would have required submission of this issue to the jury; the court would have to have charged the jury that before it could consider Kleinman’s alleged statements, it first would have to have found a conspiracy from other evidence (People v Cassidy, supra; People v Pontani, supra). In the present case, submitting that subject to the jury would have risked confusing the jury, since the other evidence of a conspiracy was also the evidence of a bribe.

. The charge to the jury included these remarks:
“You heard testimony from Edward Gruskin as to certain things that Inspector Morris Kleinman allegedly said to him on April 11, 1979, at the front of the store at 3315 Avenue H and later in a parking lot, relating to things allegedly done by the defendant on April 11 at 3315 Avenue H.
“You may consider whether Kleinman said certain things to Gruskin as testified to by Gruskin, and if so, what weight, if any, to give to Kleinman’s statements to Gruskin as evidence of what happened earlier in the store between Kleinman and Gruskin.
“If you find that Kleinman made certain statements to Gruskin, then in determining what weight to give to these statements you are to consider what Kleinman meant by them, and whether, under all of the circumstances known to you, they are entitled to be believed. In making these determinations, you may apply the same tests of common sense that you would apply in determining the credibility of any other statement, such as the reasonableness of the alleged report by Kleinman, the degree to which the statement was spontaneous or given in response to questions by Gruskin, the interval of time between the statement and the alleged event reported, whether the statement is consistent with or inconsistent with the credible evidence, whether Kleinman had a motive to tell the truth to Gruskin or not to tell the truth, whether Kleinman has engaged in any criminal or immoral conduct affecting his believability, and any other facts you consider relevant as bearing upon the meaning or trustworthiness or lack of trustworthiness of his alleged statements to Gruskin.
“You may not speculate why Kleinman was not available to testify as a witness in court, and you may not draw any inference unfavorable to the prosecution or the defendant because he was not a witness. However, in making the determination as to what Kleinman meant by the alleged statements to Gruskin and what credit they are entitled to, you are to consider that Kleinman was not available to be seen in this trial and to be cross-examined, and that cross-examination by the lawyer for the opposing side is an important method for testing credibility. It is for you alone to determine whether the weight you wish to give to any statement made by Kleinman to Gruskin, if they were made, should be reduced because Kleinman was not available to be seen in court and to be cross-examined.”